**\*FOR PUBLICATION\***

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX
## APPELLATE DIVISION

| | |
|---|---|
| JOSHUA BELARDO, | ) D.C. CRIM. APP. NO. 2006/023 |
| | ) |
| Appellant, | ) Sup.Ct.Crim. 136/2004 |
| | ) |
| v. | ) |
| | ) |
| PEOPLE OF THE VIRGIN ISLANDS, | ) |
| | ) |
| Appellee. | ) |
| | ) |

RECEIVED

On Appeal from the Superior Court of the Virgin Islands

Considered: August 15, 2008
Filed:     April 22, 2009

BEFORE:   **CURTIS V. GÓMEZ**, Chief Judge, District Court of the
Virgin Islands; **RAYMOND L. FINCH,** Judge of the District
Court of the Virgin Islands; and **MICHAEL C. DUNSTON**,
Judge of the Superior Court of the Virgin Islands,
sitting by designation.

ATTORNEYS:

**Martial A. Webster, Esq.**
St. Croix, U.S.V.I.
        Attorney for Appellant.

**Maureen Phelan, AAG**
St. Thomas, U.S.V.I.
        Attorney for Appellee.

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 2

**Per Curiam.**

### Memorandum Opinion

### I. FACTUAL AND PROCEDURAL BACKGROUND

Anthony Minto ("Minto" or "victim") and Joshua Belardo
("Appellant" or "Belardo") had a standing feud over Belardo's
relationship with Minto's daughter, Angela Minto.  Their
exchanges included both verbal and physical entanglements. On one
occasion, Minto punched Belardo. The feud between the two men
peaked on April 24, 2004, at about 6 p.m., when Belardo
approached Minto in a parking lot outside the Northside Market on
St. Croix.  While Minto was talking with another person, Belardo
withdrew a firearm, pointed it at Belardo and cranked the slide
of the firearm back so that one bullet ejected and another bullet
loaded.[1]

The proprietor of the Northside Market called the police.
Belardo fled the area on foot. (J.A. 119.)  Renaldo Rivera
("Rivera"), an individual Belardo knew from the neighborhood
happened to drive by, and picked Belardo up as he was flagging a
ride down.(J.A. 119.)  Rivera, then a police cadet, and at the
time of the trial a police officer, observed that Belardo

---

[1] Minto noticed that Belardo pick up the ejected bullet from the ground.
The proprietor of the market called the police. (J.A. 117-118.)

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 3

appeared nervous, so he asked Belardo if something was wrong.
(J.A. 153.) According to Rivera, Belardo recounted the recent
events and showed him a 9mm handgun. (J.A. 153-155.)   Rivera also
became nervous and dropped Belardo off at the Candido Guadalupe
Housing Community. (J.A. 155-157.) Shortly thereafter, police
arrived at the scene.  Witnesses provided both a description of
Belardo and the vehicle that picked him up.

Officers identified Rivera's car and questioned Rivera, who
provided a statement and identified Belardo as the man he
transported. (J.A. 175.) The officers executed an arrest warrant
for Belardo and a search warrant for his home.  There, one live
round of ammunition was found. (J.A. 192.) The firearm was never
recovered.

On May 12, 2004, Belardo was charged in a three count
information with: 1) unlawful possession of a firearm in
violation of V.I. Code Ann. tit. 14, § 2253(a); 2) assault in the
third degree, in violation of V.I. Code Ann. tit. 14, § 297(2);
and 3) brandishing and exhibiting a deadly weapon in violation of
V.I. Code Ann. tit. 14, § 621(1). Following a trial on February
8, 2005, a jury convicted Belardo on all counts.

Following the trial and verdict, Belardo's counsel alleged
that he learned that juror number one, Vernamae Doward ("Doward"
or "juror number one") is Anthony Minto's sister. Based on this

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 4

contention, Belardo filed a motion for a new trial. In August and December of 2005, the trial court held hearings on the motion. The court heard arguments from counsel and reviewed testimonial and documentary evidence, including Minto's birth certificate and testimony from both Doward and Minto. On June 19, 2006, the court issued an opinion denying Belardo's motion for a new trial. This timely appeal followed.

## II.   ISSUES PRESENTED

Belardo raises several issues for our consideration: whether the trial court erred in denying his motion for a new trial; whether Minto's testimony concerning Belardo's relationship with Minto's daughter was irrelevant and unfairly prejudicial; whether the evidence concerning the single round of ammunition found in Belardo's home was irrelevant and prejudicial; whether the court erred in excluding character evidence of Minto's propensity for violence and; whether the court erred in denying Belardo's motion for judgment of acquittal.

## III. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to review criminal judgments and orders of the Superior Court in cases in which the defendant has been convicted, and has not entered a guilty plea. *See* V.I. CODE ANN. tit. 4, § 33 (2006); Revised Organic Act of 1984, 28 U.S.C.§ 1613(a)(2006). Generally, we review *de novo* questions of law,

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 5

issues implicating rights protected under the U.S. Constitution, and the interpretation of statute. *See Government of V.I. v. Albert*, 89 F.Supp.2d 658, 663 (D.V.I. App. Div. 2001). We afford the more deferential clear error review to factual determinations. *Id.*

## IV. DISCUSSION

### A. Whether the trial court erred in denying Belardo's motion for a new trial.

Ordinarily, we review the denial of a motion for new trial on the basis of newly discovered evidence for abuse of discretion. *See United States v. Perdomo*, 929 F.2d 967, 969 (3d Cir. 1991).

Belardo's motion for a new trial was predicated on his belief that a juror dishonestly responded to the trial court's *voire dire* inquiry. During *voire dire*, and prior to empaneling the jury, witnesses who were expected to testify at trial were displayed before the venire. Anthony Minto was among those witnesses. The trial judge asked the panel whether they knew any of the witnesses or their family members. The venire was also asked whether they were related to any of the proposed witnesses by blood or by marriage. (App. 91-98.)  Ms. Doward, who eventually became a juror, did not respond to either of these question which were addressed to the panel as a whole.

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 6

Belardo filed a timely motion for a new trial alleging that newly discovered, post trial evidence reveals that juror number one, Ms. Vernamae Doward, and Anthony Minto, the victim, are siblings.

On August 24, 2005, and again on December 14, 2005, the parties came before the Superior Court for hearings on Belardo's motion. At the August 24, 2005 hearing, evidence was submitted and Ms. Doward and Mr. Minto gave testimony. Both testified under oath that there was no blood relationship between them, although Doward acknowledged that she recognized Minto "from passing in the street". (J.A. 331.) Doward testified that she was aware that her father Vincent Doward Sr. had other children besides those with her mother. However, she was not aware that Anthony Minto was one of them. (*Id.*) Doward further testified that prior to the court proceedings, she did not know Minto's name, nor had she been aware of a familial relationship between herself and Minto. (*Id.*)

Minto testified that he did not know Doward. He also testified that he never knew the identity of his biological father. (J.A. 336-337.) Minto's testimony was substantiated by the vacant line on his birth certificate reserved for his biological father's imprimatur. Minto further asserted that he was never interested in identifying his father, nor did anyone

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 7

ever disclose his father's identity to him. (J.A. 343.) At the close of evidence, the court set the matter for sentencing on September 21, 2005.[2]

A second hearing was held on December 14, 2005, during which counsel made oral arguments. On June 19, 2006, the trial court denied Belardo's motion. On appeal, Belardo argues that both juror number one and the victim lied during the hearing and that their undisclosed familial relationship tainted the jury's impartiality and denied him a fair trial.

The touchstone of a fair trial is an impartial trier of fact -- "a jury capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982)(citations omitted). *Voir dire* examination is critical because it serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors. *McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 554 (1984) (citations omitted).

The lynchpin of this process is the necessity of truthfulness by each prospective juror. *Id.* at 555. Therefore,

---

[2] On September 20, 2005, Belardo filed an addendum to the motion for a new trial. Belardo annexed several documents to his motion, including affidavit from an investigator for the Territorial Public Defender's office and statements from Doward's family members all alleging that the victim was related to juror number one's brothers. The People responded by filing a motion in opposition accompanied by a signed statement from one of juror number one's brother's claiming that although he referred to the victim as "brother" he and the victim were friends. (J.A. 59.)

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 8

to receive a new trial based on his contentions, Belardo "must

first demonstrate that a juror failed to answer honestly a

material question on *voir dire*, and then further show that a

correct response would have provided a valid basis for a

challenge for cause." *United States v. Hodge*, 321 F.3d 429, 441

(3d Cir. 2003); *United States v. Richards*, 43 V.I. 337, 241 F.3d

335, 344 (3d Cir. 2001). Generally, a court of appeals will not

invalidate a jury verdict because of a juror's "mistaken, though

honest" response at *voir dire. Hodge*, 321 F.3d at 441; *McDonough*

*Power Equip.*, 464 U.S. at 555.

In denying Belardo's Motion for a New Trial, the court

reasoned that:

> The affidavits submitted by Defendant, at best, tend
> to infer that some people in Ms. Doward's family
> believed that they were related to the Victim.
> Defendant's exhibits and letters do the same. What the
> affidavits and other document do not prove, however,
> is that Ms. Doward and Mr. Minto are related to one
> another or know one another. In an island as small as
> St. Croix, where community ties are frequently close
> knit, it is relatively common place for individuals to
> consider someone who is not related by blood as
> "family". It is entirely possible that several members
> of the Doward family considered the Victim a
> "brother", when in fact the Dowards and the Victim are
> not blood related. It is also entirely possible that
> some members of the Doward family may know the Victim
> intimately, when in fact Ms. Doward herself did not
> know the Victim or have any personal association
> whatsoever with the Victim. More importantly, however,
> Ms. Doward and the Victim both testified to not being
> related and not knowing one another.

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 9
(J.A. 97.)

Whether Doward and Minto are related or know one another is a question of fact. We defer to the trial court's finding of fact in this regard, particularly where Anthony Minto's birth certificate failed to demonstrate his father's identity or a corresponding familial connection with Doward.[3] Accordingly, in the absence of reliable evidence to the contrary and given our deference to the trial court's finding of fact, we cannot conclude that the trial court abused its discretion in denying Belardo's motion for a new trial.[4]

**B.   Whether testimony regarding Belardo's relationship with Minto's minor daughter was properly admitted into evidence**

The trial court's evidentiary rulings are discretionary and

_____

[3] In her letter to the trial court judge, Angela Minto, the victim's daughter, claims that the Dowards are her family. She indicates that she knew and referred to juror number one as "Auntie", prior to the trial. (J.A. 67.) Belardo argues that this letter warrants a new trial. However, Angela Minto was not subject to the scrutiny of cross examination or the duty of truthful sworn testimony. Nor is there any evidence to authenticate that the letter was in fact written by Angela Minto.

[4] Moving past the question of juror number one's veracity during *voire dire*, we also find it pertinent to briefly highlight, more generally, the dispositive question inherent to Belardo's Rule 33 challenges: specifically, whether, Vername Doward a/k/a juror number one, may have harbored any bias in favor or against Doward, or held any particular belief, or opinion that would prevent or substantially impair the performance of [her] duties as a juror in accordance with her oath. *See United States. v. Murray*, 103 F.3d 310, 323, (3d Cir. 1997). In this case, both Minto and juror number one testified, under oath, that they were not family and that they did not know one another. Hence, there is no evidence that juror number one's limited knowledge of Minto, in passing, infused any bias, or opinion, one way or another, towards either Minto or Belardo.

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 10

are reviewed for abuse of discretion. *United States v. Sokolow*,

91 F.3d 396, 402 (3d Cir. 1996); *Gov't of the V.I. v. Pinney*, 967

F.2d 912, 914 (3d Cir. 1992).[5]

Belardo cites two instances where he claims that reference

to his relationship with Minto's minor daughter was improperly

admitted as irrelevant and prejudicial evidence of other crimes.

First,

| | |
|---|---|
| Q. | Could you tell the ladies and gentlemen of the jury, was there an issue between you and Mr. Belardo regarding your daughter? |
| A. | Yeah. Basically he's ten years older than my daughter, and I was trying to tell him |
| Mr. O'Bryan: | Objection as to his trying to tell him. |
| The Court: | Overrule |
| Q. | What did you tell Mr. Belardo. |
| A. | If he cared about her, he would let her go to school. That's his prerogative. Leave her alone. That's his prerogative. |

(J.A. 114-115.)

Second,

Q.  Alright, sir, to your knowledge, why was your daughter remanded to YRC?

A.  She kept running away and hiding with this guy.

Q.  When you say this guy, who do you mean?

A.  Mr. Belardo.

---

[5] An abuse of discretion arises when the trial court's decision rests upon "a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008).

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 11

(J.A. 142.)

"Relevant evidence" means evidence having any tendency in
reason to prove any material fact." V.I. Code Ann. tit. 5, §
771(2); *see also* Fed. R. Evid. 401. As a general matter, "all
relevant evidence is admissible." 5 V.I.C. § 777; *see also* Fed.
R. Evid. 402. "Yet, even relevant evidence may be excluded if the
trial judge finds in his discretion that its probative value is
substantially outweighed by the risk that its admission will (a)
necessitate undue consumption of time, or (b) create substantial
danger of undue prejudice or of confusing the issues or of
misleading the jury, or (c) unfairly and harmfully surprise a
party who has not had reasonable opportunity to anticipate that
such evidence would be offered. 5 V.I.C § 885; *see also* Fed. R.
Evid. 403.

In this matter, the testimony regarding the relationship
between Belardo and Minto's daughter is both relevant and
probative.[6] The testimony explains why Belardo and Minto had
previous disagreements; explains why Minto previously punched
Belardo and; provides a logical basis, or motive for Belardo
pulling a loaded handgun on Minto as a result of the feud between
the two men.  Accordingly, we cannot conclude the trial court

---

[6] *See* Fed. R. Ev. 401.

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 12

abused its discretion in allowing the challenged testimony.

**C.    Whether the evidence concerning the bullet found in Belardo's home was relevant and unfairly prejudicial.[7]**

Belardo also argues that the trial court erred in admitting evidence concerning the bullet found in his home. Specifically, Belardo argues that such evidence was irrelevant and unfairly prejudicial because he was not charged with unauthorized possession of ammunition. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence.  Fed R. Evid. 401. Evidence is unfairly prejudicial if it has "an undue tendency to suggest a decision on an improper basis, including if it provokes an instinct to punish." *See Carter v. Hewwitt*, 617 F.2d 961, 971 (3d Cir. 1980); F.R. Evid. 403 advisory committee note.

Sergeant Hitesman, a police officer assigned to the forensic division of the Virgin Islands Police Department, testified concerning the ammunition found. (J.A. 215-234.) The Government sought to admit the bullet into evidence through Hitesmann's initial testimony that he was given custody of the bullet after

---

[7] Again, the Superior Court's evidentiary decisions are reviewed for abuse of discretion. *Gov't of the V.I. v. Pinney*, 967 F.2d 912,914 (3d Cir. 1992).

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 13

its discovery in Belardo's home. Defense counsel objected. At

that juncture, the trial court sustained counsel's objection and

precluded admitting the bullet into evidence as cumulative. (J.A.

217-219.)

However, during cross-examination, defense counsel

questioned Hitesmann concerning whether the ammunition was a live

round. Belardo's attorney challenged Hitesmann's conclusion that

the round was live, as speculative. (J.A. 221.)  On redirect, the

prosecutor asked questions to rehabilitate Hitesman's testimony

regarding the ammunition. (J.A. 224.) At that point, the

prosecutor moved, for a second time, to have the round admitted.

(J.A. 226.)  Again, defense counsel objected. In overruling

counsel's second objection, the court stated:

Mr. O'Bryan (defense counsel), you made an issue of it on

your cross-examination. Sir, you made a big issue of it and you

opened the door, I was not going to let the live round in, but I

am going to let it in. (J.A. 227.)

Thereafter, the court admitted the bullet into evidence.

(J.A. 230.) As a general rule, we exercise great restraint in

reviewing a [trial] court's ruling on the admissibility of

evidence under Rule 403. *Gov't of the Virgin Islands v.*

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 14
*Archibald*, 987 F.2d 180 (3d Cir. 1993).[8]

In this case, the victim testified that Belardo cocked the gun and cranked it so that a bullet ejected and that Belardo picked up the ejected round and took it with him. (J.A. 117.) Police officer Rivera also testified that Minto showed him a 9mm firearm while fleeing the scene of the incident. (J.A. 155.) There was also testimony from police officers that although the 9mm firearm was never found, a single round of ammunition was found in Belardo's home that matched the type of gun witnessed by Minto and Rivera.  Hence, at this point in the trial, where two unrelated witnesses testified to the existence of a single round, the round discovered in Belardo's home supported both Rivera and Minto's testimony, and as such, was both relevant and probative to the veracity of the witnesses.

When defense counsel made an issue of whether the round was live, the bullet quickly gained new relevance. Specifically, defense counsel's cross-examination of the forensic officer opened the door for inquiry into whether the bullet was indeed a

_____

[8] However, where an objection does invoke Rule 403, the trial judge should record his balancing analysis to the extent that his exercise of discretion may be fairly reviewed on appeal." *United States v. Lebovitz*, 669 F.2d 894, 901 (3d Cir.). Where, as here, the trial judge did not perform the required balancing to explain the grounds for denying a Rule 403 objection, we may undertake to examine the record ourselves, *Id.; see also United States v. Schwartz*, 790 F.2d 1059, 1062 (3d Cir. 1986), and we need not defer to the reasoning of the [trial] court, *Government of the Virgin Islands v. Pinney*, 967 F.2d 912, 918 (3d Cir. 1992); *Government of the Virgin Islands v. Archibald*, 987 F.2d 180, 186 (3d Cir. 1993).

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 15

live round. When, defense counsel challenged the officer's

testimony as speculative, the probative value of the bullet

increased exponentially. In turn, the potential for unfair

prejudicial effect decreased because determining the true nature

of bullet itself was now an issue afresh.  Accordingly, the trial

judge did not abuse his discretion in admitting evidence

concerning the bullet.

> **D.  Whether the court erroneously excluded evidence of the
> victim's propensity for violence during cross-
> examination**

The victim, Anthony Minto, testified that he was a peaceful

person even though he also testified that he punched Belardo on a

prior occasion. (App. 131-132.) On this basis, Belardo's counsel

sought to illicit evidence from Minto of his criminal history and

a pending domestic violence permanent restraining order issued

against him (App. 132-136.) Relying on Fed. R. Ev. 404(b), the

trial court excluded the evidence.

Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not
> admissible to prove the character of a person in order to
> show action in conformity therewith. It may, however, be
> admissible for other purposes, such as proof of motive,
> opportunity, intent, preparation, plan, knowledge,
> identity, or absence of mistake or accident, provided
> that upon request by the accused, the prosecution in a
> criminal case shall provide reasonable notice in advance
> of trial, or during trial if the court excuses pretrial
> notice on good cause shown, of the general nature of any
> such evidence it intends to introduce at trial.

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 16

*Id.*[9]

In excluding the evidence under Rule 404(b), the trial court

stated that Belardo "never gave notice to this Court or opposing

counsel you wanted to get into this." (J.A. 135.) However, Rule

404(b) specifically imposes a notice requirement on the

*prosecution*, not the *defendant* who seeks to introduce character

evidence. *See* Rule 404(b), *supra* (emphasis added). Hence, in this

regard, the trial court clearly erred in its reasoning.[10]

---

[9] Character questions arise in two different ways in litigation.
Character may be an element of a charge, claim or a defense. Fed. R. Evid. 404
advisory committee note. When this occurs, courts say that character is "in
issue." *Id.* An example is the competency of a driver in an action for
negligently entrusting a motor vehicle to an incompetent driver; another is an
action for defamation of character in which the defendant referred to the
plaintiff as a dishonest person. *Id.* In such cases, it is clear that character
evidence is relevant. *Id.* In fact, it is more than relevant, because it is
essential under the pertinent substantive law to prove character in order to
prove the charge, claim or defense. *See, e.g., United States v. Keiser*, 57
F.3d 847 (9th Cir. 1995) (character is "in issue" within the meaning of the
Rule when "proof, or failure of proof, of the character trait by itself
[would] actually satisfy an element of the charge, claim or defense").
     Other times, character evidence is used for an entirely different
purpose; it is used to demonstrate that because a person has a certain
character trait, he or she acted on a specific occasion in conformity with
this trait. *Id.* In other words, this kind of character evidence is
circumstantial evidence of a person's actions on a particular occasion. *Id.* It
is these cases that are covered by the exclusionary principles found in Rule
404(a). Subdivision (b) covers the use of particular acts of a person that
may be indicative of the person's character. *Id.*

[10] However, the Supreme Court has long held that "'[a litigant] is
entitled to a fair trial but not a perfect one,' for there are no perfect
trials." *Brown v. United States*, 411 U.S. 223, 231-232 (1973), quoting *Bruton
v. United States*, 391 U.S. 123, 135 (1968), and *Lutwak v. United States*, 344
U.S. 604, 619 (1953).We have also come a long way from the time when all trial
error was presumed prejudicial and reviewing courts were considered "'citadels
of technicality.'" *Kotteakos v. United States*, 328 U.S. 750, 759 (1946), The
harmless-error rules adopted by this Court and Congress (through Fed R. Evid.
103)embody the principle that courts should exercise judgment in preference to
the automatic reversal for "error" and ignore errors that do not affect the

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 17

However, notice was not the only reason the trial court

excluded the evidence. The judge also stated that:

> I am not going to let you get into any other incident,
> prior bad incidents, if you will, as you indicate,
> unless I hear a cognizable self-defense claim. I have
> not heard one yet, so at this juncture I am not going to
> permit it. I am not going to withhold you from doing it
> later of you make that showing. Objection sustained.

(J.A. 136.)

Rule 404((a)(2) provides, in pertinent part that:

> In a criminal case, and subject to the limitations
> imposed by Rule 412, evidence of a pertinent trait of
> character of the alleged victim of the crime offered by
> an accused, or by the prosecution to rebut the same, or
> evidence of a character trait of peacefulness of the
> alleged victim offered by the prosecution in a homicide
> case to rebut evidence that the alleged victim was the
> first aggressor.

Hence, the rule provides that the *accused* is permitted to

introduce evidence of a pertinent character trait of the *victim*

of a crime. *See* Rule 404(a)(2)(emphasis added).

The most common example of an appropriate use of this

exception, is where the character of a victim is introduced in a

self-defense case.[11] *Id.*  Under the Rule, the defendant is

---

essential fairness of the trial. *See Kotteakos*, supra, at 759-760.

[11] In criminal cases, the so-called "mercy rule" permits a criminal
defendant to introduce evidence of pertinent character traits of the defendant
and the victim. But that is because the accused, whose liberty is at stake,
may need "a counterweight against the strong investigative and prosecutorial
resources of the government." Rule 404 advisory committee note (citing C.
Mueller & L. Kirkpatrick, Evidence: Practice Under the Rules, pp. 264-5 (2d
ed. 1999). *See also* Richard Uviller, Evidence of Character to Prove Conduct:
Illusion, Illogic, and Injustice in the Courtroom, 130 U. Pa. L. Rev. 845, 855
(1982)(the rule prohibiting circumstantial use of character evidence "was
relaxed to allow the criminal defendant with so much at stake and so little
available in the way of conventional proof to have special dispensation to

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 18

permitted to introduce evidence of the victim's character for
aggressiveness (subject to the limitations on form provided by
Rule 405), to create the inference that the victim acted in
accordance with that character trait on the occasion in question.
*Id.*

In this matter, however, Belardo never raised a cognizable
self-defense claim. Belardo never testified, nor did any other
witness testify that Belardo acted in self defense when he cocked
and pointed the loaded firearm at Minto. Belardo further failed
to assert self-defense after the trial court's cue to counsel
that it would allow evidence of Minto's prior bad acts, should
Belardo effectively raise self defense.

Nonetheless, Belardo insists that Minto placed his character
at issue when he testified that he was a "peaceful fella." (J.A.
127.) We recognize that a party who introduces his good character
for peacefulness risks throwing open the subject of his character
for peacefulness and, consequently, gambles allowing counsel to
penetrate a previously proscribed area. *See Michelson v. United
States*, 335 U.S. 469, 479 (1948)(citations omitted).

However, counsel invited the victim's "peaceful fella"
response and no cognizable self-defense claim was made.  Where no

_____

tell the factfinder just what sort of person he really is").

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 19

cognizable claim for self defense was not made, and no witnesses testified that Minto acted aggressively; evidence of Minto's prior bad acts were neither probative, nor relevant.

Accordingly, we conclude that the trial court erred in concluding that the defendant was required to give notice of his intention to raising the victim's alleged prior bad acts. However, this error was harmless beyond a reasonable doubt[12] where the court's ultimate exclusion of prior bad acts was predicated on separate, distinct and well-founded reasoning. Accordingly, based on the Superior Court's alternative reason for excluding the proffered evidence[13], we conclude that the guilty verdict rendered in this case was unattributable to the trial

---

[12] The Third Circuit Court of Appeals has held that an error is harmless if the record shows "'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *United States v. Fallon*, 470 F.3d 542, 547 (3d Cir. 2006)(quoting *Chapman v. California*, 386 U.S. 18 (1967)). Errors committed by a trial court in a criminal case are considered harmless if the reviewing court determines that there is a "high probability" that the error did not affect substantial rights. *United States v. Werme*, 939 F.2d 108, 116-17 (3d Cir. 1991).

Under this standard, a reviewing court must have "a sure conviction that the error did not prejudice the defendant, but need not disprove every reasonable possibility of prejudice." *United States v. Jannotti*, 729 F.2d 213, 219-20 (3d Cir. 1984); *United States v. Thomas*, 998 F.2d 1202, 1207 (3d Cir. 1993). "[An]otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the . . . error was harmless beyond a reasonable doubt." *Fallon*, 470 F.3d at 547 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986)). There is no fixed formula for determining whether errors are "technical" or affect "substantial rights," and in final analysis judgment in each case must be influenced by conviction resulting from examination of proceedings in their entirety, tempered but not governed in any rigid sense of stare decisis by what has been done in similar situations. *Pependrea v United States*, 275 F.2d 325 (Cal.App. 1960).

[13] Namely, Belardo's failure to cognizably articulate a self-defense argument.

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 20

court's error. *See United States v. Korey*, 472 F.3d 89, 96 (3d

Cir. 2007)(The question "'is not whether, in a trial that

occurred without the error, a guilty verdict would surely have

been rendered, but whether the guilty verdict actually rendered

in this trial was surely unattributable to the error..."");

*Korey*, 472 F.3d at 96(quoting *Sullivan v. Louisiana*, 508 U.S.

275, 279 (1993)(emphasis omitted)).

   **E.   Whether the court erred in denying Belardo's Motion for
         Judgment of Acquittal.**

   At the close of the Government's case and again at the close

of all evidence, Belardo moved for a judgment of acquittal in

accordance with Federal Rule of Criminal Procedure 29. Both

motions were denied.  On appeal, Belardo challenges the trial

court's ruling.

   We afford plenary review to the lower court's denial of a

motion for judgment of acquittal, using the same standard the

lower court should have employed in the first instance. *See*

*Government of V.I., v. Sampson*, 94 F. Supp.2d 639, 641 (D.V.I.

App. Div. 2000). Under that standard, this Court must determine

whether the evidence of record, viewed in a light most favorable

to the Government, was sufficient to permit a reasonable jury to

find the defendant guilty of the charged crime beyond a

reasonable doubt. *See Sampson*, 94 F. Supp.2d at 641-643. "The

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 21

verdict of the jury must be sustained if there is substantial
evidence, taking the view most favorable to the Government, to
support it." *Id.* (quoting *Glasser v. United States*, 315 U.S. 60,
80 (1942)(citations omitted)).

First, Belardo argues that there was insufficient evidence
to prove that Belardo behaved in a threatening manner. Thus, the
evidence could not have supported a conviction of brandishing and
exhibiting a dangerous weapon. Second, Belardo contends that,
where the firearm was not recovered, the Government failed to
establish that the purported weapon was a firearm under 23 V.I.C.
§ 451 or a dangerous weapon. Finally, Belardo avers that the
Government failed to establish that Belardo committed the offense
of assault in the third degree.

## 1. Unlawful possession of a firearm during the commission of a crime of violence

> Whoever, unless otherwise authorized by law, has, possesses,
> bears, transports or carries either, actually or
> constructively, openly or concealed any firearm, as defined
> in Title 23, section 451(d) of this code, loaded or
> unloaded, may be arrested without a warrant, and shall be
> sentenced to imprisonment ...

V.I. Code Ann. tit. 14, § 2253.

> Firearm means any device by whatever name known,
> capable of discharging ammunition by means of gas
> generated from an explosive composition.

V.I. Code Ann. tit. 23, § 451.

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 22

At trial, Minto testified that Belardo drew a firearm on

him and manipulated the weapon so that a bullet ejected. Mr. Ala

Hannon, the proprietor of North Side Supermarket, testified that

he saw Belardo crank a gun and point it at Minto. Police Officer

Rivera testified that, in the process of fleeing the scene of

the incident, Belardo displayed what he identified as a 9mm

handgun on Belardo's person. Finally, police officer John

Felicien testified that Belardo does not have a license to

possess a firearm. (J.A. 209.)[14]   Viewing the evidence in a light

favorable to the Government, the trial court did not err in its

rulings that there was sufficient evidence for a reasonable

juror to find that Belardo possessed a firearm without

authorization of law.

## 2.   Assault third degree

In pertinent part, the Virgin Islands statute proscribing

assault provides that a person commits assault in the third

degree when,

> Whoever, under circumstances not amounting to an
> assault in the first or second degree--
>
> (1) assaults another person with intent to commit
> a felony;

---

[14] Assault third degree is a crime of violence.

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 23

     (2) assaults another with a deadly weapon;

     (3) assaults another with premeditated design and
     by use of means calculated to inflict great
     bodily harm . . .

V.I. Code Ann. tit. 14, § 297.

    Here, with the testimony presented, the jury could find

that Belardo cranked and pointed the weapon at Anthony Minto,

and that he made a threatening gesture by so doing.  The

testimony was also sufficient to show that such actions

demonstrated an immediate intention and ability to commit bodily

harm.

### 3.    Brandishing and Exhibiting a deadly weapon

    Whoever--

     (1) not in necessary self-defense, and in the
     presence of two or more persons, draws or
     exhibits any deadly weapon in a rude, angry,
     and threatening manner; or

     (2) in any manner unlawfully uses the same in
     any fight or quarrel-

V.I. Code Ann. tit., 14, § 621

    Here, Minto testified that Belardo pointed what he

described as a handgun at him while Minto was speaking with

another person.  Mr. Ala Hannon, owner of North Side Supermarket

testified that he witnessed Minto and Belardo arguing and that

he saw Belardo crank the gun and point it at Minto.  Both Minto

*Belardo v. People of the Virgin Islands*
D.C. Crim. App. No. 2006/023
Memorandum Opinion
Page 24

and Hannon's testimony was unrebutted at trial.[15] Thus, a

reasonable juror could have found that Belardo brandished and

exhibited a deadly weapon. The trial court, therefore, did not

err in denying Belardo's motion for judgment of acquittal

concerning his violation of 14 V.I.C. § 621.

**V.   CONCLUSION**

For the reasons cited above we **AFFIRM** Joshua Belardo's

conviction. An order consistent with this opinion shall follow.

---

[15] In order to make out a charge of exhibiting a gun, it is not
absolutely necessary for the prosecution to produce the gun. *Government of the
Virgin Islands v. Moran*, 4 V.I. 379 (Mun. Ct. St. T. and St. J. 1963).